Scott, J.
The plaintiff in error claims that the court below erred in awarding to Gilbert & Rush, the attaching ^creditors •of her husband so much of the Barclay debt as would satisfy their •claim, instead of entering a judgment in her favor for the whole amount of said debt, and also in overruling her motion for a new trial.
As to the first point: If, under the pleadings and evidence in the case, she was entitled to hold the whole of the debt due from Barclay, as against her husband’s creditors; or, if the pleadings and evidence showed a right on her part to more than the residue of said debt, after satisfying the claim of Gilbert & Rush, then the •court .below erred in rendering the judgment of which she complains ; otherwise, she has no just cause of complaint. What, then, were the material issues of fact presented by-the pleadings •of the parties, upon the determination of which their rights depended?
The plaintiff, Mrs. Ferguson, was seeking to recover from Barclay an indebtedness of $500, represented, by an order in writing ■for that amount, drawn by her husband on Barclay, October 9, 1856, and payable to her father, William Carlton, April 1, 1857, and which was accepted by Barclay, October 13,1856. Her action was commenced July 16, 1857; and in her petition she avers that ,-said sum of $500 was due from Barclay as the purchase money for two town-lots sold to him by her husband, in his own name, prior ■to the date of the order. She alleges that two-thirds of these lots were in equity and in fact her property, and that her husband ■owned the remaining one-third only; and that the purchase money to be paid by Barclay belonged to herself and her husband in the .same proportion; that her husband, being indebted to her father in ■divers sums amounting to about one-third of the $500 to become ■¡due from Barclay, for the purpose of discharging said indebtedness, *83 at the request of her father, drew the order sued upon, procured its acceptance by Barclay, and then delivered it to her father, William •Carlton, “ who, intending not to withhold from the plaintiff her part of said sum, but to give her his third of the same, gave said ■order to her as her own property, and she has ever since held the •same as such; ” and that her husband, Aaron D. Ferguson, has .since released to her, for her own separate use, all rights which •he might have, as her husband, in the order and its proceeds. *She alleges that Barclay, the drawee of the order, refuses payment “on account of some claim made thereto by the administrator of the estate of her father.”
As a second cause of action, she alleges, in general terms, that ,she is the owner and holder of the order set out in the first count of the petition, and that Barclay is indebted to her, on his acceptance thereof, in the amount of the order, less twenty dollars, which, in the statement of the first cause of action, is admitted to have been paid thereon.
It is evident that these two causes of action (so called) are, in fact, one and the same, stated in different forms—in the first count, -specially, narrating in detail the facts upon which the plaintiff’s ownership of the debt represented by this order is grounded; and in the second count, generally, without showing how the plaintiff became the owner of the order.
Such a mode of pleading is unauthorized by the code; and it would have been the duty of the court, on motion of either defendant, to have ordered the second count to be stricken out, or to have required the plaintiff to elect upon which count she would proceed, and to strike out the other. Sturges v. Burton, 8 Ohio St. 215. But no objection seems to have been taken to the petition, by motion or otherwise.
How, then, stands the case? There is nothing inconsistent between the general averments of the second count and the particular •or special statements of the first; and as the code requires pleadings’ to be verified by affidavit, we must assume that the plaintiff did not claim or intend, under the second and general count, to set up or prove a state of facts inconsistent with the allegations of the first. The second cause of action adds nothing to the allegations of the first, and whilst it is therefore useless, it is at the same time harmless, and may be regarded as mere surplusage.
The case, therefore, is left to stand upon the cause of action a» *84 stated in the first count; and, looking to this statement, it is clear-that the plaintiff claims to have acquired the ownership of one-third only of the Barclay debt, by means of this order. She obtained the-order as a voluntary gift from her father, who, as she affirms, paid', a consideration for only one-third of it, owned but one-third of it, and gave her the order, *“ intending to give her Ms tMrd of it.”' Clearly, he could not give her what he himself never owned. But, of the other two-thirds of the debt, she claims to have been the-.owner, “in equity and in fact,” prior to the drawing of the order, and independently of it, by reason of her having been the equitable owner of two-thirds of the lots, from the sale of which the debt, arose. This averment of the petition is expressly and fully denied, not only by the answer of the administrator of her father’s estate,, but also by the answer of Gilbert & Rush, the attaching creditors of her husband.
They were brought into the case upon the answer and cross-petition of Barclay, for the purpose of determining their claims on the-fund in controversy, by interpleading with the other claimants.
These creditors, Gilbert & Rush, who are the defendants in error,, in their answer, say that the lots mentioned in the petition “were-sold to the said Barclay by the plaintiff’s husband, Aaron D. Ferguson, in his own right; that he was the owner of the same, and also owner of the money due upon said sale;” and that said order-was drawn and given to said Carlton without consideration, and for the purpose of defrauding them and other creditors of said Aaron D. Ferguson. They further deny that said order was ever given to-the plaintiff by said Carlton; they deny that plaintiff had an equitable interest in the lots sold to Barclay; affirm that Aaron D. Ferguson was the equitable owner thereof, and the owner in fact of the-purchase money, up to the time when they commenced proceedings-in attachment against him before a justice of the peace, which they proceed to set out particularly, and of which they attach a transcript to their answer as part thereof. In this part of their answer it is-alleged, in substance, that Aaron D. Ferguson being indebted to-them in the sum of $136.37 before the drawing of said order, they brought suit against him to recover the same, before a justice of the-peace of Trumbull county, on the first day of November, 1856, and, ■ upon proper affidavit, duly made, obtained an order of attachment against his property and credits, and garnishee process against Barclay and Carlton; that the order of attachment and summons in> *85 the action were duly served upon Ferguson November *3, 1856; that due notice was issued and served on the garnishees on the same day; in pursuance of which Barclay appeared before the justice and answered on the 6th November, 1856; that Carlton •failed to appear; that judgment was regularly rendered by the justice in the action, November 6th, 1856, in favor of Gilbert & Rush and against Ferguson, for the sum of $136.37 debt, and costs taxed at $2.95; arid that Barclay was, upon hearing, found indebted "to Aaron D. Ferguson in the sum of $500, to become due April 1, 1857, and was ordered thereupon to pay into court, when said debt would become due, the amount of said judgment and costs; and ■that said judgment and order still remained in full force and wholly .unsatisfied. They therefore ask judgment, etc.
To the several answers of Barclay, the administrator, and the •■creditors, the plaintiff replied, reaffirming the allegations of her petition; not denying the judgment of the creditors or the proceedings in attachment, but averring that at the time of said garnishment, her husband, Aaron D. Ferguson, had no interest whatever in said amount due from Barclay, and that the order of the justice was, for that reason, not only erroneous, but void. She also denied the fraud charged, and averred that the order was drawn for the consideration stated in the petition.
Upon these pleadings, the case was tried in the common pléas, ■and the plaintiff obtained judgment, from which an appeal was "taken, upon notices properly given, both by the administrator of -Carlton’s estate, and by Gilbert & Rush, the attaching creditors, and .an undertaking duly executed for that purpose by the latter, with ■sureties.
In the district court, the parties submitted the case to the -court for trial, upon.'the same issues; and it is shown by a bill of exceptions that the plaintiff, to sustain the issues on her part, proved ■the making of the order, as follows:
“ $500. ■■ Liberty, October 9,1856.
“Dr. Isaac Barclay—Please pay William Carlton, Sen., five hundred dollars on the first day of April, 1857, or when the deed ■of the lots No. 9 and 10, in the village of Girard, is presented legally.
“ (Signed,) A. D. Ferguson.’.’
■*It further appears that Carlton obtained the acceptance *86 of the order from Barclay, October 13,1856. The plaintiff proved the possession of the order, by her attorney, at and before the commencement of this suit, and from thence hitherto; that he received- and held it as her property; that afterward, and before the commencement of this suit, the said A. D. Ferguson executed and de- ' livered a deed of release to his said wife, as follows:
.“For value received, I hereby assign to my wife, Elizabeth Ferguson, all interest which I, as her husband, or otherwise, may have in or to the proceeds, or any part thereof, of an order in her possession drawn by me on Dr. Isaac Barclay, in favor of William Carlton, for five hundred dollars, accepted by said Barclay, to hold to-her own separate use, independent of my control.
“ (Signed,) Aaron D. Ferguson, [seal.] ”
“May 18,1857.”
The plaintiff’s attorney, by whom the making of said release was-proved, also testified, on cross-examination, that when the release was made, it was expected that a suit would be commenced on the-order.
The plaintiff thereupon rested.
■ The defendants thereupon gave in evidence the transcript of the-judgment of the justice referred to in the answer of G-ilbert &. Rush, and thereto attached, and rested, without any other evidence-
The foregoing was all the evidence in the cause.
The court thereupon found that said order was drawn, delivered,, and accepted, but that it was without any sufficient consideration, and that the plaintiff was not entitled to the control of said money, as against Gilbert & Rush; and that they were entitled to> a sufficiency, out of said fund, to pay them the amount due on their said judgment against Ferguson.
The court thereupon proceeded; after overruling a motion for a new trial, to render judgment accordingly, awarding to the plaintiff the residue of the fund in controversy, after satisfying *the claim of Gilbert & Rush, which amounted to less than one-third of the debt found due from Barclay.
Now, under the pleadings and evidence in the case, was this finding of facts made by the district court unwarranted and clearly erroneous ?
As to the two-thirds of the debt which the plaintiff claimed to-own, independent of the order, by reason of her equitable interest. *87 to that extent, in the lots, all her all allegations on that subject were positively denied by the attaching creditors, as well as by the administrator. Upon the issue thus made, she held the affirmative,, and the facts bearing upon that issue were, from the nature of the case, peculiarly within her knowledge. The burden of proof therefore rested upon her. And yet she offered not a scintilla of evidence tending to establish this part of her claim. Indeed, the-the order which she offered in evidence, made a ¡prima facie case against it. For the order is, upon its-face, the exercise of an act of ownership by her husband, in his own name, and apparently in his own right, over the fund which it purports to transfer to his father-in-law. And yet we are asked to presume, without a shadow of proof, that one-third only of the fund drawn upon, belonged to the drawer, and that the two other thirds were the property of his wife, the present plaintiff.
But, waiving these considerations (which we can not but think would abundantly justify the judgment of the district court), if we regard her rights to the fund as resting upon her ownership of the order, which is shown only by its having been received, from some quarter, by her attorney, before this suit was brought, and held by him ever since for her; and upon the release executed by the husband to her, with a view to the bringing of suit, how then stands the case ? The plaintiff herself admits, in her pleadings, that her father paid no consideration whatever for two-thirds of the sum attempted to be transferred by the order, and that in equity he never owned more than one-third of it. As to the other two-thirds, then, he was a mere trustee; and the trust is a secret one, not disclosed by the writing. The transfer, on the face of the order, is absolute. This itself is ¡prima facie evidence of fraud, as against creditors, and should have *been explained satisfactorily by the plaintiff’s proofs. Hilliard on Sales, 340, 341. But, on this subject, no evidence was offered by the plaintiff. Besides, the defendants, by their answers, deny that Carlton gave any consideration whatever for the order. They aver that the drawing of the order was an intentional fraud upon creditors. The plaintiff alleges that a valuable consideration passed for one-third of the sum drawn for. Now, upon whom lay the burden of proof as to this issue ?
The bona fides of the whole transaction was assailed by creditors j and whatever presumptions may arise ordinarily in the case of ' *88 transfers of property, when a question is raised between the parties to such contracts in respect .to the sufficiency of the consideration, we think it clear, that to render such assignments valid, as against creditors, they must be shown to be bona fide, and upon adequate consideration; and when assailed by creditors, the exhibition of a mere formal transfer raises no presumption whatever of good faith. On this subject the authorities are believed to be uniform. Langley v. Berry, 14 N. H. 82 ; Kimball v. Fenner, 12 N. H. 248; Clapp v. Tirrell, 20 Pick. 247.
Upon this issue also, as to the existence of a sufficient consideration to render the drawing and delivery of the order to Carlton effective, as against creditors, the affirmative was with the plaintiff. The facts in respect to the consideration were peculiarly within-her knowledge and that of her husband, through whom, as her next friend, she sues, and by whom her pleadings are verified. The burden of proof was therefore upon her.
And we think the mere production of the order, which it does not appear that she ever saw, which came to the possession of her attorney simply before suit brouyht, and we know not through whom; an order confessedly without consideration as to two-thirds ■of its amount, and showing no consideration on its face for the residue ; we say, the mere production of such an order, on the trial, was clearly insufficient to raise such a presumption of good faith .and adequate consideration, as would shift the burden of proof to the defendants.
*It may seem superfluous to add, that the plaintiff’s case is not strengthened by the voluntary release to her, by her husband, of his interest in .the order, which was executed, we know not when, but if at its date, then, more than six months after the attaching creditors had obtained judgment against the husband, and an order for its payment, out of this very fund.
Under the .state of evidence, or rather absence of evidence, shown by the record, we think the plaintiff has no just reason to complain ■of the findings of the district court.
But, after the court had found the issues of fact in favor of defendants, and that the order in question was drawn and delivered to Carlton without adequate consideration, the plaintiff moved for .a new trial. The court overruled the motion, and this is also assigned for error.
The only ground of the motion, except what has already been *89 'Considered, was “ that the counsel of plaintiff were, taken by surprise on the trial of the cause, whereby they wore prevented from’ giving evidence, by which they could- have fully shown the right •of the -plaintiff in the case to all the moneys in controversy, and could have shown adequate consideration on her part, and on part •of said Carlton.” This allegation of surprise is supported by the -affidavit of counsel, showing that the surprise referred to, was the -erroneous belief entertained by counsel for plaintiff, that she would be entitled to recover without evidence on her part of good faith ¡and adequacy of consideration in the transactions involved in the issues presented by the pleadings; that they in good faith believed that such evidence would be unnecessary, until impeaching evidence would be first offered by the defendants.
A motion for a new trial bn such a ground, is addressed, to the sound discretion of the court, under the circumstances of the •case, and its action thereon is, in our opinion, not subject to review. And were it otherwise—as the surprise shown in this case consisted of a mere misapprehension of the law—we are not satisfied ■that the court below exercised its discretion unwisely or improperly in overruling the motion.
We find no error in the record, prejudicial to the plaintiff *in •■error, and therefore affirm the judgment of the district court.
Brinkerhorr, C. J., and Day, White,-and Welch, JJ., concurred.